Case number 251980 Saginaw Chippewa Tribe of Michigan et al. versus Blue Cross Blue Shield of Michigan. Argument not to exceed 15 minutes per side. Mr. Hoffman, you may proceed. May it please the court. Herman Hoffman with Farnam on behalf of the Saginaw Chippewa Indian Tribe and its Welfare Benefit Plan. I'd like to reserve three minutes for rebuttal. All right. I know this case has been around quite a long time. What are the issue or issues you think we should be focused on for this argument? There are three, your honor. Number one, the issue of the statute of limitations, which the district court on that issue concluded that the tribe had actual knowledge in 2008. And that conclusion is contradicted by the record evidence that we presented to the district court. For example, the district court relied for its holding on a declaration from the tribe's benefit manager, Connie Sprague. The district court stated it showed that she learned in 2008, Blue Cross didn't have a system in place to pay at Medicare, but her declaration didn't say that. It didn't say she learned that in 2008. And what her declaration actually said was that she never knew what Blue Cross's network rates were, how they compared to Medicare, or most importantly, that Blue Cross was wasting the tribe's plan assets through overpayments. The tribe didn't learn that until November 2014, when it found out that the Blue Cross was overpaying claims for another tribe, the Grand Traverse tribe. The district court... Well, help me, counsel. I understand that that is a key issue. But I'm looking at the tribe's response brief in opposition to Blue Cross motions for summary judgment. And it states, there is no question that SCIT understood within the first year after the 2007 MLR regulations went into effect that Blue Cross did not have a system in place to determine the MLR price for a hospital claim. I mean, that's the argument in briefing. Why doesn't that show that by 2008, they had knowledge that they were unable to calculate MLR rates? Two reasons, Your Honor. Number one, the breach at issue is Blue Cross wasting the tribe's plan assets by overpaying claims. And that's the way this court has twice characterized the claim. And that's the tribe's breach of fiduciary duty claim under ERISA. And it's not a claim about what system Blue Cross had. It's a claim about overpaying the tribe's claims using the tribe's plan assets. And so whether or not Blue Cross had a certain system or an other system, that's quite beside the point. And number two, the MLR regulations were enacted, first became effective in July 2007. So of course, it took Blue Cross some time to get a system in place. And so the tribe, it knowing about a system in 2008, that really is unremarkable in the context of when these regulations went into effect. The fact that of course it took Blue Cross some time to figure out what the regulation said and how it was going to change its system. And beyond that, the tribe's knowledge, even if Blue Cross had said that, which it didn't, but even if the Blue Cross had said it, it's incorrect because ultimately Blue Cross was able to pay the tribe's claims at Medicare. There are representations from Blue Cross when it was asked by the tribe's agents, its broker, Gallagher, it was asked, are you Blue Cross obtaining all the discounts that the tribe is entitled to? And Blue Cross' response to that was that it was. It was obtaining, it was capturing every discount. And that's at page ID 11630 of the record. When Blue Cross was asked, was it capturing- And what year, I'm sorry, what year was that statement made? That statement was made in 2011. But there were also statements, and this was another area where the, another finding that the district court made that is incorrect. There was a statement by the earliest Blue Cross made any representation about its rates was in 2009. And the district court cited Dan Brooks, who was the tribe's agent with Gallagher, it cited his deposition for that proposition. But that again, misstates the record. The deposition testimony, the specific statement that Mr. Brooks made was that throughout the years, Blue Cross made those statements to him when they inquired about what Blue Cross, how Blue Cross was paying claims and what its rates were, et cetera. That's when Blue Cross represented throughout the years, he said, and he said, it said up to 2009. And so construing that testimony, as a district court was required to in the tribe's favor and taking all reasonable inferences in its favor, the testimony is that those statements by Blue Cross were made throughout the years, and not just that they all of a sudden in 2009 as the district court held as a matter of law. And so that, and that goes especially to the fraud or concealment that would toll the statute of limitations and would prevent it from accruing. Were those questions that the tribe's agents made to Blue Cross about, is it capturing every discount for the tribe? How do Blue Cross' rates, how do they really compare to Medicare? And when those questions were asked, Blue Cross' response was that there's no difference. So there's no reason throughout all those years that the tribe would somehow have known that Blue Cross was overpaying its claims and wasting plan assets. When number one, the tribe didn't know what Blue Cross' rates of payment were. The tribe didn't know what the Medicare rates of payment were. And the tribe didn't know how those rates compared. And when they asked Blue Cross, Blue Cross said, you wouldn't receive any savings by us, Blue Cross, paying them at Medicare rates. Counsel, could I ask a question that would clarify things for me a little bit? Because there seems to be tension about what has to be known in order to kick the statute of limitations in. And if you go back and read Grand Traverse, it's very clear that they're saying it's whether or not MLR was being received and all the other adjacent issues were not. It was just, were you receiving it? So if you were receiving it and you, but you didn't, or if you were not receiving it, but you didn't know that you were supposed to be receiving it, that part didn't make any difference according to, and you agree with that, that that's the law here. That's what we're looking for is merely evidence of, of non-receipt. Well, what the, what the Grand Traverse Ban Court held and, and it was evidence of that, that the tribe knew, right? That it wasn't receiving payments at Medicare rates and that. You didn't have to have an end there. That's enough, right? Well, the, here's what the issue is, right? Well, that's my question. I have to say, so I hope you'll give me a yes or no answer to that because it seems to me to be dispositive. We have to follow the law as it was in the, in the Grand Traverse case. And if the Grand Traverse case on the same facts or similar enough facts says the relevant issue is actual knowledge of not payment, not receiving. Well, the Supreme Court. Is that binding on us? Sorry? Is that binding on us? The Grand Traverse Ban decision is, is binding. It's a published decision. And is that particular part of it binding on us that we're just looking at the actual knowledge of non-payment of MLR? In the context of that case of the, of the tribe's claim there, and if it's complaint, that's what the Grand Traverse Ban Court held. And that's what, that's exactly what the district court relied on in this case as well, right? That, that is what the district court relied on. And, and the statute, I want to be clear though, the statute, the ERISA statute says actual knowledge of the breach or violation. And the breach or violation here is the wasting of plan assets and the, the overpayment of claims. And that's what this court has held in a public. See that that's, that's dressing it now as a violation, whereas the, the, the court was very specific that it's not whether there's a violation. It's whether you knew you weren't getting it, regardless of whether it was a violation or not. On that point, the tribe didn't know what its claims were being paid at. It didn't know the amounts because Blue Cross keeps that under lock and key. But it didn't have to know, according to, according to the analysis that the district court went through, you didn't have to know the amount. You just had to know that they MLR. The tribe, so if we're saying the tribe should have, you know, all it needs to know is, is that it wasn't receiving Medicare. Well, what does, what does, what does Medicare mean? What does MLR mean? Well, obviously under the law that they should have been been doing things with it. But the, but the holding of the case seems to be that that's not the fact that triggers the statute of limitations. It's just knowledge that it's not being obtained. Period. That's what they seem to say. And that's what the district court relied on. That's the main trouble I have with this case. So if you could clear that up, that'd be helpful. And if you could. Not to interrupt here, but if there was a, would Grand Travis apply along the lines that Judge Rogers is raising, if there was concealment or fraud in the withholding and not making the payment, I'm not, not to unduly complicate the question, but I'm just wondering if factually the two cases line up, what do you have to say about that? Yes. So factually they do not line up and here are the two key distinctions between the two cases in the Grand Traverse Span case in the, in its complaint, the tribe had mentioned, and this is what the sixth circuit, this is what this court seized on there. The tribe had mentioned that Blue Cross specifically told the tribe that it was, it was not going to pay its claims at MLR. That's not present here. Number two, and this is even more important in Grand Traverse Span, the tribe entered into an MLR agreement, a Medicare like rates agreement with Blue Cross. In that agreement, and that's also what, what this court relied on in that case, in that agreement, Blue Cross and the tribe both agreed that Blue Cross's rates for the year of the, that was entered into were higher than the, than Medicare. May I pause in that answer? Because I think that, I don't think this, the result in this case hinges solely on the GTB, the Grand Traverse Band, because what it was looking to was our Wright case, Wright versus Haney. And what that case said was, what Judge Rogers was articulating, that what you have to know to trigger the statute of limitation is knowledge of the facts or transaction that constituted the alleged violation. Not whether it was a cognizable or legally cognizable claim, but just the underlying facts. And I guess what I'm struggling with is, we know what the briefing was in 2008. We know that Connie Sprague did say that she came to understand, so this was over time, that Blue Cross did not have a system in place to price claims at MLR. The CHS clerk, Margaret Elliott's deposition said that she always knew Blue Cross did not seek MLR for the tribe's claims. And the tribe admitted then, what we had talked about earlier after the first year, that there is no question that the tribe understood within the first year. That's in 2008, 2009. The other thing you cited me to was 2011, which would have once again been a problem on the statute. So, help me understand why these statements of the tribe's witnesses do not create a problem under the statute of limitations. Sure. And so, the statute of limitations provides that it has to be actual knowledge of the breach or violation. And the breach or violation here is Blue Cross' wasting plant assets, its failure to preserve plant assets by overpaying claims. And each of those statements that Judge Strange, you just mentioned, don't speak to the overpayment issue. That because, and that's because... Isn't the undergirding reason for those underpayments what these individuals knew that Blue Cross, Blue Shield was not calculating and had no system to calculate the MLR rates? If you don't have a system to calculate it, then you know at that point that you cannot tell whether they're over or underpaying relative to MLR. Right. That's the argument on the other side. Tell me why that's wrong. Well, because to your last sentence there, they don't know whether they're overpaying or underpaying because they didn't know what Blue Cross' actual payment rates were. No, what they didn't know was the outcome. But what they did know was that they had Blue Cross was, it was clear in the record that the tribe understood that Blue Cross did not have a method of calculating Medicare-like rates. So they weren't doing it. So is that not, is that not knowledge of the facts or transaction that came to constitute the alleged violation and ultimately created a action? No, and maybe if I illustrate it, try to illustrate it with a story, and it's the story we mentioned in our reply brief. If, for example, I have a carpenter come to my house and he says he's going to be charging me his standard rates. And I come to find out that he didn't apply a particular lumber discount. Does that mean that as a result I'm overpaying? No, because his rates could be just as good as if he applied that. The problem here is that it's not one, it's not one of multiple components that relate to this overpayment. Isn't the entirety of your claim based on the fact that they were not paying MLR rates? And yet at that time you knew they weren't paying MLR rates. So help me understand. I'm struggling with it, but I just, I don't understand how there wasn't knowledge if they knew they couldn't do it. They weren't doing it. So they couldn't possibly be paying MLR rates because Blue Cross didn't even know what they were. Blue Cross did, didn't know what they were, and they learned that really quickly. But here the issue is that the MLR regulations require payment either at Medicare or the contractual rate if lower. That's the MLR regulations. That's what they require. So, for example, if Blue Cross always paid at its contractual rate and its contractual rate was always lower, then there's no violation of the MLR regulations. The tribe is getting what it was entitled to under the MLR regulations, and there's no breach of fiduciary duty. And that's why that overpayment component of it is so important. And the Wright versus Hine case that your Honor mentioned, that requires knowledge of all the material facts. And this overpayment component of the claim is a material fact of this transaction. In fact, I would say it's the material fact of the transaction because without an overpayment, there's no breach. One last question. I'm sorry for going over, Judge Clave. Just one last question. Where is the, can you just cite me to where in your amended complaint it makes that allegation the most clearly? So in the amended complaint, on paragraph 139, page ID 88, it says there, as a result since July 5, 2007, plaintiffs have been overpaying for services eligible for lower MLR payment rates. And then in the count itself to paragraph 146E, the claim is that Blue Cross breached its fiduciary duties by paying excess claim amounts to Medicare participating hospitals for services authorized by a tribe or tribal organization carrying out a CHS program. And so the... So that's paying over Medicare-like rates. Paying over the rates that the Medicare-like rate regulations required. And so the question then to answer the question of, well, what does MLR mean? That has to be defined. And MLR means either the Medicare rate or the contractual rate if lower. And so simply saying, well, they paid an... The tribe knew that sometimes a claim was paid at something other than Medicare, that's not the violation. The violation has to be the overpayment. Has to... Because that's what wasted claim plan assets. And that's also what Wright versus Hine held and what the Grand Traverse Band Court relied on. It has to be... The court has to look at all the material facts underlying the claim and the overpayment is... A is actually the material fact here. Thank you, Your Honor. All right. You'll have your rebuttal. We'll hear from your opposing counsel. Yes. Good afternoon. Thank you, Your Honor. Philip DeRosa appearing on behalf of defendant Appellate, Blue Cross, Blue Shield of Michigan. Your Honor, in our view, GTB really does provide the blueprint here. The GTB Court, as you know, held that the only relevant fact triggering the statute of limitations was Blue Cross's failure to obtain MLR, because that's the factual basis for those claims. That's what GTB held and it relied on Wright in reaching that holding. And that holding applies directly here, because as Judge Schranch, you've noted, and really cited all of the things that I would have cited, the plaintiff's summary judgment response, Ms. Elliott's deposition, Ms. Sprague's declaration. It's all consistent that from the very beginning, plaintiffs knew that Blue Cross was not obtaining MLR, which makes their lawsuit filed in 2015 untimely. Now, what the argument we're hearing today about how what plaintiffs really needed to know was, well, we didn't know that it's not about a failure to obtain Medicare like pricing per se. It's that we didn't know it was squandering plan assets. We didn't know that we were overpaying. But that specific argument was rejected in GTB. GTB held that the only, again, the only relevant fact that was needed for actual knowledge was that MLR wasn't being obtained. It did not matter the extent to which... Wasn't there some difference? Weren't there factual differences between the cases? Wasn't there some negotiation after GTB recognized this problem? They understood it in ways that the tribe in this case did not. Isn't that correct? No, Your Honor. I don't think that's right. I actually have two responses to that. GTB made it pretty clear that the back and forth with respect to the facility claims processing agreement there had nothing to do with the ERISA claim. The court kept returning to the bottom line, which was that all that was necessary to trigger the statute of limitations under ERISA was the fact. Not whether the fact led to the potential for a claim or legal liability, but it's the fact. It's the transaction, as you noted, from the Wright case. So it's that failure to obtain MLR. And if you look at the discussion of what the tribe knew in GTB based on the... And recall, that case was decided based on the pleadings. It was decided based on the allegations in the tribe's complaint in that case, in which it alleged that it was Blue Cross's failure to take advantage of MLR discounts available to plaintiffs. That's the exact same claim that's being made here. If you go to paragraphs two and 136 of the amended complaint, paragraph two, Blue Cross has been collecting more than the plan is required to pay for MLR eligible claims. Paragraph 36, Blue Cross failed to ensure that plaintiffs paid no more than MLR for MLR eligible services. So I would contend that if you look at the record here and you look at what GTB found to be dispositive, the cases really are not distinguishable at all. Even though... I'm not quite following your argument here. If the record suggests that there's a a disputed allegation as to whether Blue Cross misrepresented to the tribe that there was no meaningful difference between this payment rates and MLR, if that's what creates a disputed factual controversy, then the argument you just put forth would not hold water. There was never any formal notification or correspondence or anything to the tribe about how Blue Cross was handling this MLR situation. So if the employees had different understandings, the employees of the tribe, if there are factual disputes as to what they knew and understood and whether the tribe even had knowledge or noticed about how this payment scheme was working, don't we have a factual dispute that precludes summary judgment here? No, Your Honor, and I think what that gets at is the point that I'm trying to make here. If you go to GTB, GTB holds that the only relevant fact is whether or not the plaintiffs knew that Blue Cross was not obtaining MLR, and they knew that. If you look at the record evidence in the case, there is no dispute about that. Just to interrupt you on that, there's some testimony to the contrary of what you just said. This Shelly Mayor Rio, who was a CHS clerk, her deposition in the record that she did not know that plaintiff's program was eligible for MLR and did not know when the MLR regulations went into effect. Then you've got Connie Sprague, the plaintiff's benefits manager, who swore that she had no understanding of how the network prices compared to MLR and no understanding that Blue Cross' self-insured plans were overpaying on MLR-eligible claims. In other words, there seems to be testimony on both sides of this issue, which to me begins to create a factual dispute. What do you say to that? Well, Your Honor, I think the testimony that you're referring to, to the extent to which the employees at the tribe knew the exact permutations of MLR and how it was working, those are all of the things that GTB said are not pertinent to the triggering of the statute of limitations. What all of the witnesses did testify to and did acknowledge is that they that MLR wasn't being obtained. I think that everything that you just cited, the reason it doesn't create a factual dispute that matters here is because the arguments that the plaintiffs are making about they didn't fully understand how this mechanism worked, how this system worked, that is not relevant for purposes of determining when the statute of limitations period is triggered. It's that actual knowledge that MLR wasn't being obtained. Well, they're claiming that they didn't have knowledge. That's the whole point. They're claiming that they were lacking in knowledge. And you're saying that all that has to be the case is that, well, I'm not sure quite what you're saying. You're not saying that Grand Traverse would preclude or would cause the statute of limitations to be implicated about something, about an issue which the party being precluded had no knowledge, not a matter of actual knowledge, had no knowledge, or at least it's disputed as to whether they had knowledge of the material issue that's at stake between the parties. Your Honor, I think all I'm trying to say is that it's a matter of defining what the knowledge had to be. What you are referring to is the argument that's being made about they didn't have the knowledge about exactly how all of this worked. They didn't know exactly, they say, how Blue Cross's rates compared to MLR. Now, Ms. Sprague did testify to that she certainly knew that sometimes it could be more, sometimes it could be less. So we know that. But again, what GTB makes clear is that those details about how MLR, how that pricing worked exactly relative to Blue Cross's network's rates, that's not what the plaintiffs needed to know in order for the statute of limitations to be triggered. What they needed to know, again under GTB, is simply that the MLR was not being obtained. What is in the record from your client that would have put the tribe on notice? I understand we're looking at some of the workers that work with the tribe, but is there any document in this case created or provided by your client that says we don't do that? Blue Cross Blue Shield does not figure MLR rates for you. Your Honor, at the moment, I can't cite you to a specific document sitting here at the moment. What we have always considered and what GTB considered and what the from the plaintiffs themselves about their knowledge, that's dispositive. When they say that they knew that it was not being obtained, then that's all you need to know for purposes of the statute of limitations. Your opposing counsel says that that is perhaps a fair understanding of the 2008 time period, but that that was early on in the relationship and that there were questions remaining regarding whether Blue Cross Blue Shield actually began to undertake an MLR calculation. What is your understanding of when Blue Cross did, in fact, do MLR or let the tribe know that it would or could do MLR calculations? Your Honor, I don't think that I don't think the record reflects any evidence that Blue Cross ever told the tribe that it was going to obtain MLR. There is no evidence of that anywhere along the continuum. Okay, so then the question becomes, even though they understood that there was a regulation that that they do so in this very situation. Well, their understanding, well, there was and that's kind of the point is that the communications back and forth were that it wasn't, it was not clear to Blue Cross the extent to which it was required to obtain MLR and apply it. And in fact, that was sort of the whole, that was the whole point of the prior appeal is Blue Cross's position has always been that it wasn't clear to it the extent to which it had an obligation to do it. It wasn't sure how it would work in terms of getting the information it needed in order to apply MLR. So, that's exactly why Blue Cross did not make any representations and the record doesn't reflect any that it was obtaining MLR or working to obtain MLR because there was no information available as to it having a way to do it at the time. So, it certainly never made any such representations. And I think if you look at the record, you're not going to see evidence that's been cited that in fact, when you look at exactly the testimony that's been cited that representations were made that Blue Cross was going to obtain MLR. That doesn't exist in this record. Well, I guess that's, we are talking about the statute of limitations. That's a different issue. We're at a merits issue. Wouldn't that be problematic for your client with the wording of this regulatory requirement that the Indian tribe be given the advantage of Medicare-like rates from hospitals that provide Medicare or are qualified for Medicare? I don't see how there's any, I don't understand the wiggle room there. It seems to me to be a direct regulatory state. I'm sorry, Erin. So, you're asking me, so we're talking about the potential merits of the MLR claim at this point. That's what you're getting at? Well, I think, well, in order for there to be liability here for, in order for there to be determination that a fiduciary duty was breached, right? There would have to be a determination that Blue Cross had all of the information necessary to be able to process claims at MLR and to be able to obtain the MLR pricing. And that's a part of the case that we just have never gotten to. And so, I don't think that the record establishes, setting aside the statute of limitations, that the record in any way, I mean, if this were to go to, if it wasn't for the statute of limitations and if this case were going to go to trial, then that would be an issue. The Blue Cross, I mean, that's what this court identified in the prior appeal, is that Blue Cross, all of the issues relating to Blue Cross's ability to get MLR, the obligation to get MLR, whether it had the necessary facts in order to be able to do it and the mechanism to be able to do it, those are all the things that would go to the merits if this case were to go to trial on the merits. But this case, again, we are at the statute of limitations stage because that is, you know, we just never got to the merits here. Because in this court's prior opinion, it recognized that when it sent the case back, saying that, you know, when it disagreed- The alternative arguments could be examined, that's correct. Right, right. So, the court said, you know, there are these alternative arguments, but then it also did highlight what it said was the triable issue of the extent to which there are claims that were authorized, that were subject to MLR and whether Blue Cross's defenses to that pertained. You know, there's a question about what the plaintiffs need in order to prove a breach of fiduciary duty. It would be our position if it got to that point, you would need expert testimony. But again, yeah, the record has not been developed with respect to those things. It's all about these alternative arguments that the district court relied on in granting summary judgment. You know, I believe Grant Travers, that lawsuit was filed in 2014 or thereabouts. And some of the events that have been mentioned as to when the plaintiff should have known about MLR, those days preceded Grant Travers. What are we to make of these days in relation to when the Grant Travers case came out? I'm sorry, Arnie. Are you referring to when this court's opinion in Grant Travers came out or when the lawsuit was filed? Well, in the summer, I think I saw somewhere in the briefing that Blue Cross had stated that the plaintiffs became aware of the information to cause the statute of limitations to begin to run around 2008 or 2009, which would have been before the Grant Travers case. What, if any, importance should we attach to that? Well, your honor, I don't think I would not attach any importance to that because if you look at the Grant Travers Ban case, the court there, the timeframes were quite similar. It was both the tribe in Grant Travers Ban and the tribe here, it was established from the complaint here, it's established in the record, that there was knowledge that MLR was not being obtained from the very beginning of when the MLR regulations went into place. The only difference is here, what the plaintiffs are claiming is that they weren't fully aware of the implications of all of that in terms of how much they believe that they might be overpaying until the Grant Travers Ban, in their words, did an audit and figured it out. That's when the Saginaw Chippewa Indian tribe here is saying that it really fully understood exactly what was going on. That's the only connection between the two cases, but if you look at the timelines in terms of what was known when, in both cases, there was actual knowledge that MLR wasn't being obtained from the very beginning. All right. Well, I guess you've used up your time here unless someone on the panel has more questions. If not, we'll take rebuttal. Thank you, your honors. Thank you, your honor. One important point, I know the Grant Travers Ban decision has been discussed a lot. The court will know that in that very decision, again, Travers Ban Court distinguished this case from it. It said that this case is distinguishable and throughout their opinion, there was a lot of discussion of this Medicare-like rates agreement that Blue Cross entered with the tribe there, which specifically compared Blue Cross's rates to the Medicare-like rates, regulations rates. For Blue Cross to now say that that didn't matter or it's not important, the Grant Travers Ban Court certainly cited that a lot in their finding of actual and it also held that this case is distinguishable from that case. On the point of whether Blue Cross ever provided any disclosure of how it was paying the tribe's claims, Mr. DeRosier was not able to identify any of that in the record because that did not happen, and that is very important. The tribe was never informed by Blue Cross how its claims were being paid or at what rates its claims were being paid. The only information that's in the record that Blue Cross ever conveyed to the tribe about that is Blue Cross saying that its rates were similar to Medicare and that there were no savings that the tribe could achieve if its claims were paid at Medicare, and that's at page ID 11630. There's an email there from Blue Cross agent Gallagher, its broker, where Blue Cross said that, and there's also the deposition testimony of Mr. Brooks at page ID 11966-67. The court will note there in that deposition testimony there's discussion about a PowerPoint presentation that Blue Cross presented to several tribes, including to the Saginaw Chippewa tribe, where it was explaining how there weren't savings, and that's also what Mr. Brooks understood Blue Cross to say. What's the date of the PowerPoint? I'm not sure about the date of the PowerPoint, Your Honor. I don't think it's in the deposition testimony specifically, but Mr. Brooks did mention again that throughout the years these statements were made by Blue Cross to him when he asked, you know, are there savings that the tribes can achieve here? You're talking about the GTB case, which your position is it was 2014 when it was filed, and that that was when you first knew about the extent of the problem? That's true. The tribe first knew about the overpayments in 2014, and that's the relevant accrual date, but Mr. Brooks, he was stated, he was, Blue Cross made representations to him even before 2009. That's his deposition testimony. They were making representations to him about how their rates compared to Medicare and that there were no, that there were no savings there, and that told. And when, what time was that representation? Well, in his deposition testimony, he said it was, they made those through the years, and he said, and then there was an email he had looked at, and it was that it was before 2009. And this email was, the email was in 2009 that he was talking about, and his deposition testimony isn't a model of clarity, but he was talking about a 2009 email, and he said, you know, which was this 2009 email, he said that's when Blue Cross was making those representations to him about the, about how there weren't savings between Blue Cross's network rates and the Medicare rates. And how does that relate to the testimony from your tribal members or administrative people that they understood that there was no method by which Blue Cross could calculate the MLR, and that they were aware of that before that 2009 time frame? Well, here's the issue with that, Your Honor. I do think it's important to be, you know, to be clear about what was, what's actually said in the summary judgment response, and that's that Blue Cross at that point, you know, within one year from July 2007, didn't have a system in place to determine the difference. And what the, what certain tribal employees said was that, you know, that that was their understanding at some point in time. And it's not like they said that that was their understanding in 2008 or 2009. That was their understanding at some point in time. But what they didn't know, which is the crucial fact here, is what Blue Cross was actually paying the claims at. Because if Blue Cross... Well, they're paying, Blue Cross gets the money through them, or authorizes them to make a payment of a certain dollar amount, right? No, so... How is the, who pays directly to the hospital? Is it Blue Cross, or is it by by a specification from Blue Cross that the tribe didn't pay? Here's how it works. Here's how it worked between Blue Cross and the tribe. Blue Cross sent the tribe a request for a lump sum amount of claims that was going to go to pay. That money then went to Blue Cross. It was held by Blue Cross, and Blue Cross decided which claims to pay, which claims to deny, and at what amount to pay those claims, pursuant to its very confidential agreements with providers. So, the tribe had no clue ever, on a claim by claim basis, what Blue Cross was paying the claims at. And we were fighting this in the district court in discovery, trying to get that claims data that would show us the amounts that Blue Cross paid those claims at, because the tribe never received it, and Blue Cross refused to give it. And so, and that's how that worked. And so, I want to make sure the court understands that, because all the tribe would do is give a lump sum amount to Blue Cross, when Blue Cross would request it, after the fact. And Blue Cross was doing these payments with the tribe's money, but it was the only one who knew, and the provider, of course, what these claims were being paid at. The tribe didn't know that. You know, as I understand, Blue Cross said that it needed the names of the members to provide the data, and there was this dispute or delay in the tribe providing the names. And why didn't, and there was a stipulated order, I think, between the parties. Why didn't that, these names had to be provided? Why didn't, the tribe isn't that big. Why didn't you have a stipulated order that the data had to be provided for all the tribe members, instead of this back and forth as to the names were going to be furnished? Well, and here's how it worked, Your Honor. The Blue Cross, of course, knows who the enrollees are. They were the entity that was in charge of coordination of benefits for the tribe. They were the entity that was paying claims on behalf of the tribe. They were the entity that was receiving all the provider bills for tribal members who went to hospitals. And so they knew, and they have records of who's enrolled and when they're enrolled, et cetera. What happened was we requested the claims data for all the tribe's claims that were administered by Blue Cross, and Blue Cross did not give us all the claims. And so when we went and then through our own detective work, figured out they didn't do that, we said, look, we're missing claims. You didn't give us them all. And that's when they started coming up with these excuses that they needed the birthdates, that they needed certain names. And we established, and we showed the district court this, that Blue Cross always had the birthdates. In fact, of each of them, they had the names, birthdates, and everything of all the enrollees. And in fact, Blue Cross itself produced them in 2017 in this litigation. It was the one who had all that information and it produced it. It's at page ID 15508. There was communications there where Blue Cross itself produced it. And so Blue Cross was coming up with these excuses during this discovery dispute about how it needed information from the tribe. But that was all the way to try to shift the blame onto the tribe for its own deficiencies. Well, there was a long history of those discovery disputes that really don't govern, in my estimation, or have any import here. I guess we're looking at arguments that are somewhat crossing in the night a bit. What I would like, if you can give me an understanding of what was going on at the tribe level with these individuals who have testified that they knew that Blue Cross Blue Shield was not, could not, and did not calculate MLR rates. What did the tribe do to make that move forward? Is there, I'm not finding information in the tribe then demanded that they make that calculation or claimed that they were failing to do what their duty was. I'm not seeing how that worked. What was going on between the two of those since we seem to have people who know they didn't know MLR rates? Yeah, there were, those happened through the tribe's broker, your honor. Those requests of the tribe, wondering, are there, will these regulations benefit the tribe? Can the tribe save money through these regulations? How the arrangement worked was, they would meet with their brokers, right? That's kind of the go between, between Blue Cross and the tribe was the broker, Gallagher in this case. And so when the tribe had questions, the first person they'd go to was Gallagher and then Gallagher would then forward on their requests to Blue Cross. And so those were then the communications that I mentioned, these emails and Mr. Brooks deposition testimony when he asked Blue Cross, we were aware of the MLR regulations. There's a lot of talk in the industry that they're going to save the tribe a lot of money. The tribes are besieging us with questions about them. And then Blue Cross's response was that there weren't significant savings or really any savings between its rates and the rates that were payable under the regulations because its rates were best in the business. And so those inquiries happened through the broker and that was Blue Cross's response. And so given they were assured that there were no savings and the tribe had no other information, it's not like Blue Cross was giving them any other information about how it was paying its claims other than these lump sum requests for money, which didn't tell the tribe anything on a claim by claim basis, how its claims were being paid. The tribe was left in the dark. It didn't know any better. And so unless the court has any other questions, I see my time is up. Thank you. Yes. Thank you for your arguments on both sides and the case is submitted.